**Zaida LEBRON, Plaintiff,**

v.

**Michael POWELL, Chairman, Federal Communications Commission, Defendant.**

No. CIV.A. 99–3050 (JMF).

United States District Court, District of Columbia.

Sept. 5, 2003.

David A. Branch and Bryan Anthony Chapman, Washington, DC, for plaintiff.

Jane M. Lyons and Michael A. Krasnow, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Plaintiff filed this action on November 17, 1999. She complained of discrimination in her employment and retaliation for filing complaints about that discrimination. The case was referred to me for all purposes, including trial, on April 19, 2000, and I initially set a deadline for the end of discovery on August 31, 2000 and a trial date of November 13, 2000. *Order of May 18, 2000,* # 9.[1] The case then took the first of all too many diversions from what should have been the clear and easy path to trial.

## BACKGROUND

### Initial Discovery Delays
### Caused by Plaintiff

In 2000, plaintiff was represented by Byron Chapman, Esq. As the deadline for discovery approached, the government[2] filed

---

1. For ease of reference, I will refer to my orders and the pleadings by their names and docket numbers.

2. The defendant is the Chairman of the Federal Communications Commission, now Michael Powell. I will refer to the defendant as "the government."

*Defendant's Status Report to the Court,* # 11. In that document, the government reported that it had responded to plaintiff's written discovery demands, but plaintiff had never responded to the government's written discovery demands. *Id.* at 2. Government counsel, Jane Lyons, Esq. ("Lyons") wrote two letters to plaintiff's counsel asking when production could be expected. She received her answer nine days before discovery was to close when plaintiff's counsel called to say that his hard drive had crashed and that he hoped to have the interrogatory responses by August 22, but he had not received any responsive documents from the plaintiff. *Id.* Lyons had noticed plaintiff's deposition for August 24, 2000, and plaintiff's counsel suggested delaying it for a week. *Id.* at 3.

Lyons indicated that once she received responses to her discovery she intended to issue subpoenas for plaintiff's medical records and retain an expert to review the records and conduct an independent medical examination of plaintiff. *Id.* Lyons also pointed out that plaintiff's counsel had not conferred with her as to filing the joint report required by Local Civil Rule 16.3 and had failed to attend the first scheduling conference, claiming that he had not received notice of it. *Id.* at 3–4. She proposed revisions of the discovery deadlines and postponement of the pre-trial conference. *Id.* at 4–5.

A memorandum to my chambers filed by my law clerk indicates that on August 23, 2000 I spoke to counsel who advised me that they were creating a new proposed schedule. They did so, and on September 1, 2000 I issued a revised Scheduling Order. *Scheduling Order,* # 13. Under this Order, discovery was scheduled to close on October 31, 2000, and trial was set for January 8, 2001. *Id.*

On October 5, 2000, the government filed *Defendant's Motion to Compel and for an Award of Expenses,* # 14. In a memorandum accompanying this document, Lyons reported more derelictions in plaintiff's responses to discovery. She reminded me that at a status conference held on September 1, 2000 (which must have been held over the phone) plaintiff's counsel represented that he

would complete all discovery responses and transmit a release for plaintiff's medical records "within a few days." *Memorandum in Support of Defendant's Motion to Compel and for an Award of Sanctions* at 4.

On September 8, 2000, Lyons received unsigned and unverified responses to interrogatories. *Id.* Plaintiff flat out refused to answer an interrogatory that asked her to describe the emotional distress she alleged in her complaint. *Id.* at 5. While she produced documents, she did not file any written response to the government's specific requests.

On September 14, 2000, Lyons re-noticed plaintiff's deposition for September 22 and 25, 2000. *Id.* In a letter dated September 14, 2000, she reminded plaintiff's counsel of dates set for the independent medical exam by the government's expert, Dr. Carole Giunta. *Id.* Lyons agreed, however, to a continuation of the deposition upon assurances that Dr. Giunta's examination would proceed and that discovery would be completed in the near future. *Id.* at 4–5. Plaintiff never appeared, however, for Dr. Giunta's examination and never contacted anyone about her whereabouts. *Id.* at 6. They tried again, and after being fifty minutes late, plaintiff submitted to the examination. *Id.*

On September 29, 2000, I held another telephonic status call with counsel to discuss these continuing discovery problems. During that call, I ordered plaintiff's counsel to provide the medical release by October 2, 2000 and to respond in full to Lyons' objections to plaintiff's discovery responses by October 4, 2000. Lyons, however, received nothing on either day. *Id.*

### Plaintiff's Voluntary Motion to Dismiss and Subsequent Motion to Withdraw

On October 13, 2000, however, plaintiff filed a voluntary motion to dismiss. *Plaintiff's Voluntary Motion to Dismiss,* # 15. In that document, she indicated that she suffered from depression and was on medication that affected her ability to think and function. *Id.* She claimed to have had a series of part-time jobs and was therefore suffering

severe mental, emotional, and financial difficulties. *Id.*

There the matter stood[3] until August 2, 2001 when plaintiff, now represented by new counsel, David Branch, Esq., ("Branch"), filed *Plaintiff's Motion to Withdraw Plaintiff's Voluntary Motion to Dismiss,* # 21. The government opposed, but I granted the application. *Order of September 28, 2001,* # 25. In an accompanying Memorandum Opinion, I stated, however:

> In addition, plaintiff and her new counsel must be more diligent in meeting deadlines and responding to defendant's discovery requests. Upon the issuance of this Order, the case will resume at the exact procedural posture at which the parties left off. Therefore, plaintiff must produce written discovery responses, as requested by defendant's motion to compel of October 5, 2000, within twenty (20) days of the issuance of this Order. At the very least, these responses must include all seven of the items detailed on page eight of defendant's motion, as well as all other document requests and interrogatories still pending as of October 5, 2000. Failure to comply will not be looked upon with sympathy by this Court.

*Memorandum Opinion,* # 24, at 5.

## Plaintiff's Continued Failure to Comply with Discovery

On January 17, 2002 I issued a Scheduling Order that set a deadline for discovery of March 11, 2002 and a trial date for October 28, 2002. *Order,* # 27.

On April 17, 2002, the government filed its *Motion to Dismiss Complaint, or in the Alternative, to Re-open Discovery, to Compel and for Sanctions,* # 29, that I denied by my order of October 10, 2002. In an accompanying Memorandum Opinion, I explained how, at a deposition taken on March 6, 2002, plaintiff indicated that she had a couple of boxes that might contain information to her claim but that her lawyers had not had access to

them. *Memorandum Opinion,* # 41, at 2. She indicated that she would make the boxes available to counsel. *Id.* The deposition was continued until March 22, 2002, but in the interim, Branch did not review them, although a letter Lyons sent him on March 6, 2002 specifically requested that "[p]laintiff update all discovery requests as required by Fed.R.Civ.P. 26(e)(2)." *Id.* Instead, at the deposition on March 22, 2002, plaintiff indicated that she had not examined the contents of the boxes. *Id.* at 2–3. She had made efforts to do so but had not turned over what she had found to her own attorneys. *Id.* at 3. She also expressed a willingness to turn over a contract she had with her current employer. *Id.* This was significant because it bore on whether plaintiff had mitigated her damages since she lost her job.

In a subsequent letter, Lyons advised counsel that the boxes of documents and the contract were responsive to the government's *Request for Production of Documents,* "specifically to document requests numbered 11, 7 and 2 respectively." *Id.* She demanded immediate production. *Id.* In response, Branch protested that he had produced all responsive documents but indicated that he would request that his client bring all documents in her possession to Branch's office so that Lyons could inspect and copy them. *Id.* at 4.

On October 10, 2002, I denied the government's *Motion to Dismiss,* but I issued the following order:

> 1. Plaintiff shall produce immediately to her attorneys all documents contained in the "box" which she referred to during her deposition. Plaintiff's counsel shall immediately review those documents to determine if they have been previously provided to defendant. If they have not been so provided, plaintiff's counsel shall make available to defendant's counsel within forty-eight (48) hours any document which is responsive to defendant's previous dis-

---

**3.** Note that Lyons had filed *Defendant's Response to Plaintiff's Voluntary Motion to Dismiss,* # 16 in which she indicated that the government did not oppose plaintiff's motion subject to (1) its objection to plaintiff's characterization of her mental state as rendering her incapable of continuing this matter and (2) reimbursement of the $1,2000 expense incurred by the government when plaintiff failed to appear at the first examination in Dr. Giunta's office.

covery requests. Once that process has ended, plaintiff's counsel shall certify under oath and in writing that all responsive documents have been produced.

2. Plaintiff shall produce, in an expeditious manner, her employment contract with Liberty Tax Service as well as her tax returns for the years defendant has not yet received. If it is determined that these documents have either been lost or destroyed, I will permit the defendant to seek a spoliation instruction at trial.

3. Defendant will be permitted to resume plaintiff's deposition for one full day of eight (8) hours. Defendant can then renew any motion seeking relief based on the occurrences at that deposition.

*Order,* # 39.

On November 18, 2002 Branch filed a certification that he sent a courier to plaintiff's home to retrieve six boxes (not one box) of documents. *Notice of Certification of Counsel in Response to Court's October 10, 2002 Order,* # 43. Ultimately, Lyons caused the contents of the boxes to be copied. *Id.* Branch also certified that a copy of her employment with Liberty Tax Service was contained in one of the boxes. *Id.* Lyons then took plaintiff's deposition on January 16, 2003.

### Plaintiff's Continued Failure to Provide Accurate, Candid Discovery Responses

The government's Interrogatory Number 19 asked plaintiff to state the name of each medical practitioner who treated her for any of the emotional distress or pain or suffering she endured as a result of the allegations in her complaint. *Defendant's First Set of Interrogatories,* Exhibit A to *Defendant's Motion to Compel and for an Award of Expenses,* # 14. She named one medical practitioner, Dr. Robert Temple. *Id.,* Exhibit D. During the resumed deposition that I permitted, she revealed for the first time three additional doctors who treated her for depression in the time period for which she seeks compensatory damages. *Defendant's Renewed Motion to Dismiss or for Sanc-*

*tions,* # 50, at 2. She had only recently begun treatment with one physician, Dr. Wapner, but plaintiff said that she had been Dr. Rosynksi's patient for a long time, that she had seen him within the last six months, and that he had prescribed medication for depression. *Id.* at 2–3.

On March 22, 2002 Lyons had asked plaintiff whether she had been employed during the period from October 2000 to January 2002. She said that she had not been. *Id.* at 4. However, in her deposition on January 16, 2003, she admitted that she was employed during this period by Capital Marketplace. *Id.* at 5–6. She disclaimed any knowledge of what the defendant requested in discovery. Instead, she told Lyons in the January 16, 2003 deposition that she had a file cabinet that contained her "personal records." Thus, she disclosed for the first time that she had a file cabinet with personal records in it.

Counsel and I discussed these developments at a pre-trial conference, and that discussion led me to issue an order that provided, in pertinent part:

> **ORDERED** that plaintiff's counsel shall collect the contents of Ms. Lebron's personal filing cabinet, which she mentioned in her deposition on January 16, 2003, and deliver the contents of that filing cabinet to my chambers at The United States District Court for the District of Columbia, 333 Constitution Ave., N.W., Washington, D.C., 20001, Room 1426, by 5:00 p.m. on February 3, 2003. I will provide defendant the option either to allow plaintiff's counsel to examine the documents and determine which of those documents should have been produced pursuant to defendant's discovery requests or to allow defendant's counsel to examine the documents herself, provided that the information contained therein may only be used for purposes of this trial.

With respect to the medical providers who were identified for the first time at plaintiff's deposition on January 16, 2003, it is, hereby,

> **ORDERED** that plaintiff's counsel shall provide signed medical authorizations for the release of plaintiff's unexpurgated records for each such provider within two (2)

days of the issuance of this Order. Plaintiff's counsel shall then secure copies of all medical records maintained by each provider and make them available to defendant's counsel within four (4) days of his securing those authorizations. It is noted that the information contained in plaintiff's medical records may only be used for the purposes of this trial.

*Order of January 31, 2003, # 51.*

A week later, I was forced by this latest controversy to postpone the trial date once again so that the government could examine the contents of the file cabinet. Lyons' examination of the file in my chambers yielded more distressing information, which she summarized in *Defendant's Supplement to His Renewed Motion to Dismiss or for Sanctions, # 61.*

Within the filing cabinet, Lyons found records of treatment of plaintiff by Dr. Rosinksi. In her deposition of January 16, 2003, she specifically testified that there were no records of any kind of her treatment by Dr. Rosinksi. *Id.* at 5 (quoting *Deposition* at 17).

The filing cabinet also yielded information bearing on plaintiff's denial under oath that she was employed and her response to Interrogatory No. 20. In that Interrogatory she had been asked if she had been employed since her employment with the FCC. She answered that she had and identified three jobs with the Columbia Association, the Howard County School System, and Lord & Taylor respectively. *Plaintiff's Response to Defendant's First Set of Interrogatories,* Exhibit D to *Defendant's Motion to Compel and for an Award of Expenses.* However, the records in the filing cabinet demonstrated that she had prepared resumes indicating that she had worked at two other businesses, the Capital Marketplace and the Medicine Shoppe. *Defendant's Supplement to His Renewed Motion to Dismiss or for Sanctions, # 61,* at 6. As noted above, she had first denied being employed *at all* after she left the FCC in her March 2002 deposition. In her January 2003 deposition, she admitted that she had worked for Capital Marketplace, but at no point did she ever supplement her interrogatory as to that job. In-

deed, the documents in the filing cabinet indicated that she had been employed by three other employers: JourneyEd, Primerica Financial Services, and the Census Bureau. *Id.* at 6–7.

## ANALYSIS

This record first establishes that plaintiff has violated the most fundamental responsibility imposed upon a party engaged in discovery: to provide honest, truthful answers in the first place and to supplement or correct a previous disclosure when a party learns that its earlier disclosure was incomplete or incorrect. *See* Fed.R.Civ.P. 26(e). As I have explained, plaintiff's responses to interrogatories identified one medical provider who treated plaintiff and three jobs she had since leaving the government. The documents in the filing cabinet indicate that both of those answers were demonstrably false. She had several medical providers and other jobs she never identified in her responses. Indeed, at one point, she testified that she was not employed at all since leaving the government even though her own responses identified three jobs and the three jobs she identified in her responses were only three of the six she actually had. The existence of the boxes and the filing cabinet imposed an obvious obligation on plaintiff and her counsel to examine their contents before answering the interrogatories and the requests to produce. At the very least, plaintiff and her counsel had a duty to examine them once their existence came to light to determine whether they (1) contained documents that the government initially requested and (2) contained information that made any earlier discovery responses to interrogatories or deposition answers incomplete or incorrect. Instead, plaintiff professed not to know what the defendant was demanding, absolving herself of any obligation to be accurate in her responses. While her counsel indicated in his certification that he examined the box, he never examined the contents of the file cabinet, running the risk that he would never be able to verify the accuracy of the representations made by his client and predecessor counsel. Understandably, he finds himself in the impossible position of being unable to

defend the truth of the responses his client made during discovery.

The question becomes what to do about all of this. In my opinion of October 28, 2002, I indicated that, independent of the sanctions specifically authorized by the Federal Rules of Civil Procedure, the Court has inherent authority to prevent misconduct under the discovery rules. Authority in this jurisdiction indicates that dismissal for such misconduct is appropriate when there has been a significant disruption or delay in the judicial system, there has been prejudice to the opposing party, the misconduct is disrespectful of the court, and there is a need to deter such behavior in the future. *Memorandum Opinion of October 28, 2002* (quoting *Webb v. District of Columbia,* 146 F.3d 964, 971 (D.C.Cir.1998)).

### Significant Disruption or Delay

To say there has been a significant disruption or delay in the conclusion of this case is an understatement. It is hard to believe that this case was supposed to go to trial in 2000, and it is now September 2003. There have been three postponements of the trial date, all attributable to plaintiff's misconduct. The government and the Court have had to expend an extraordinary amount of time resolving issues that never would have arisen if plaintiff had simply answered the discovery responses accurately and honestly in the first place. I can honestly say that I have had no Title VII case on my docket that has required as much attention and engendered as much frustration as this one. I have bent over backwards to accommodate plaintiff. However, I fear that plaintiff has taken advantage of my indulgence and created an unconscionable three-year delay in the resolution of this case. The wag got it right-no good deed goes unpunished. Because of plaintiff's misconduct, we are well past the point of providing her and *her opponent* the "speedy[ ] and inexpensive determination" of her lawsuit. Fed.R.Civ.P. 1.

### Prejudice to the Government

Second, from its very first pleading, the government expressed its intent to do what any litigant will do when confronted with a claim of emotional distress. Lyons intended to collect from all of plaintiff's medical providers the records pertaining to plaintiff's treatment and make them available to the government's expert, who could then make the best informed judgment after conducting her evaluation of plaintiff. However, my order of January 30, 2003 required plaintiff's counsel to provide medical authorizations for the release of plaintiff's unexpurgated records for each medical provider identified. Plaintiff's counsel was then required to secure copies of all medical records maintained by each provider and make them available to defendant's counsel within four days of his securing those authorizations. *Order of January 31, 2003,* # 51, at 2. However, plaintiff's counsel reported that he had "encountered great difficulty in securing Plaintiff's medical records." *Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss or for Sanctions,* # 62, at 2–3. As this opinion is being written, I have not been informed whether a full set of records have been found and made available to Lyons or will be made available. Without those records, the prejudice to the government of not having all necessary information pertaining to plaintiff's medical treatment is obvious.

Furthermore, there is now the necessity of still another round of discovery. The government should be permitted to obtain the records from the medical providers and employers plaintiff recently identified, records it was entitled to get three years ago. The government then has the equal right to collect what records are available, make them available to its medical expert, and demand a second independent medical evaluation by that expert. Yet taking these steps will require the government to spend more time and money. The government is as prejudiced by the needless expenditure of money and time by its lawyer as a private litigant.

### Misconduct Disrespectful of the Court

Finally, we are dealing with misconduct that offends the court's processes. This record convinces me that this plaintiff absolved herself from any obligation to assist in the discovery process by claiming not to know what the government demanded of her. She then compounded that problem by misrepre-

senting facts while under oath. The discovery process created by the Federal Rules of Civil Procedure is premised on the belief or, to be more accurate, requirement that parties who engage in it will truthfully answer their opponents' discovery requests and consistently correct and supplement their initial responses. This plaintiff first indicated that she did not even know what the government wanted and then got caught in obvious untruthful statements under oath. To condone that behavior is to encourage it, and to encourage it is to destroy the voluntary and self-executing process that discovery is supposed to be. Finally, plaintiff's counsel tells me that none of this was willful and somehow explained by plaintiff's mental state. However, if plaintiff is complaining that she is not mentally or physically able to remember things or appreciate the importance of her oath or her discovery obligations, how will we ever know if she has produced everything she was supposed to produce or told the truth?

### THE PROPER REMEDY

While the interests and factors identified in my September 28, 2002 opinion point towards dismissal as the proper remedy, the controlling authority cautions against dismissal until lesser sanctions have been attempted. *Memorandum Opinion,* # 41 at 6 (citing *Jackson v. Washington Monthly Co.,* 569 F.2d 119 (D.C.Cir.1977)). To this point, as plaintiff correctly points out, the damage done by plaintiff has been on the question of damages. Therefore, I will initially limit the sanctions I impose to that question.

First, I will preclude plaintiff from seeking compensatory damages based on the alleged emotional distress she suffered as a result of the government's discrimination. Second, there is no present need to rule on whether plaintiff should also be precluded from seeking back pay because of the government's inability to defend itself on the grounds of plaintiff's mitigating her damages. Plaintiff is entitled to back pay only if she prevails on liability. Suffice to say here that I will certainly deduct from whatever back pay that is awarded what plaintiff earned in other jobs. Furthermore, I will not award any back pay

for the period from the first trial date, November 13, 2000, until the date of this opinion. In my view, awarding plaintiff back pay for this period of time rewards her for not answering discovery correctly, accurately, and truthfully in the first place. Moreover, I will consider any additional argument made that other deductions are in order or that plaintiff's misconduct in itself warrants denying her back pay. Third, if plaintiff prevails, I will disallow the award of any attorney's fees based on counsel's efforts in resisting the motions to compel and other applications for relief that the government had to file in the discovery phase of this case. This record firmly convinces me that plaintiff's resistance to the government's efforts to secure that to which it was entitled were not substantially justified. *See* Fed. R. Civ. 37(a)(4)(B). Fourth, I will deduct from any award, back pay, or attorney's fees received the costs, including attorney's fees, that the government incurred in having to seek the discovery to which it was entitled.

Finally, I am not ignoring that the delay encountered may impact the government's ability to defend itself on the liability phase of this case. Hence, before any witness is permitted to testify or any exhibit is offered in evidence, I will consider the government's argument that the delay caused by plaintiff's misconduct prejudiced the government in meeting the probative force of the testimony or exhibit. If convinced that the government has been prejudiced, in the context of the trial, I will not permit the witness to testify or the exhibit to be introduced.

An Order accompanies this Memorandum Opinion.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is, therefore, hereby,

**ORDERED** the *Defendant's Motion to Dismiss and for Sanctions* [#50] is **DENIED IN PART** and **GRANTED IN PART**; and it is further

**ORDERED** the *Defendant's Motion for Reconsideration and Memorandum in Sup-*

*port* [#42] is **DENIED** as moot; and it is further

**ORDERED** that a status conference shall be held on September 29, 2003 at 4:30 p.m.

**SO ORDERED.**